Tikotin. Good afternoon, sir. Good afternoon, Your Honor. Each side has ten minutes on this case. Good afternoon, Your Honor. This is Andrew Smith, SMYTH, from Palin-Tikotin. Your Honor, first I ask, withstanding the Court's given me until April 22nd to brief it, I would say this, that Mr. Wittles, the head of the government, submitted a brief saying that all we need to show is a colorful interest in the property. My client is married and living with his wife in property that he quit-claim beat it away. Quit-claim means he gives up everything, is that right? At the time, yes. Has he filed anything to show he has anything? Well, as I say, we have until the 22nd. There's something in the record showing they're married and living together, and under the Moore rule and family law, in remarriage of Moore, 28 Cal 3366, any payments made by even the wife are community payments to the separate property, and the equity built up is separate property. As between husband and wife, right? Not as between husband and third parties. No, I think it's between other parties, too. Well, you said community property. That says between the husband and wife. The husband would have a claim against the wife's interest. If he did, though, and that's what I'd like to allow until April 22nd. Counsel, did anybody order a title report in this thing? At any time? No. Where's title? Title's in the wife's name. Solely in her name, and was it in her name when the offense occurred? No. Was it in her name when the conviction came down? No. Was it in her name after he went to prison for the first time? In her name? No. All of this after the government put their lien on it, it was then in her name. Well, then it's a fraudulent conveyance, isn't it? Isn't it just a conveyance to defeat the government's claim? Well, yes, but that term doesn't mean fraud in the criminal sense. I understand. It's a remedy. That, I believe, Your Honor, helps my case in that it's a defeasible, set-asideable conveyance. And, again, the marriage of Moore seems to say he has an interest because there were community property payments. And, again, I'd like to do more on my brief, which the court gave me until April 22nd on this. I got a letter from the court saying I had more time on this. On the second part, periodic payments, Mr. Whittlesey and the government say, my client was in order to make periodic payments. The commitment order just says restitution in amount. And then it's sort of like a condition subsequent or precedent. It says, if you haven't paid at all, you will pay in periodic payments as ordered by probation. The judge knew very well he was sending this person to jail, prison, and the court, in fact, said, you're so destitute that I'll remit the fine. I don't want to burden your family. So I think there's an argument. Is the judgment of the court on record saying that? Yes. It's right in the commitment order that you'll pay according to probation. In the Ninth Circuit, it's delegable. You can delegate your power to probation, and it's a court order. I think this whole thing turns on the statute that existed at the time, 18 United States Code 3663. There's no doubt that's a restriction of some sort. What type of restriction? Is it a restriction on how long there can be deferment, installments, and then it all becomes due, like the Rostock case, which was against my position? Or is it a restriction when the last installment, when you put somebody on periodic payments, does the last installment mean the last payment? You're finished. There's two ways to resolve that. One is to look at the plain words of the statute. That's usually the first thing. But the second thing is to look at the congressional intent as there's Ninth Circuit cases on this point quoting congressional intent. The first case, though, is not Ninth Circuit, but makes it pretty clear. It's in my brief, U.S. v. Brucci, 810F2nd456, referring to this installment restriction, quote, this limitation on the duration of installment restitution as the Senate report on the VWPA indicates reflects the, now quoting from the Senate report, practical necessity in limiting both the amount of restitution ordered and the period during which restitution payments are ordered to be paid, end of quote. That sounds like the last, it talks about time. It talks about limitation. That sounds like they're protecting the defendant. I don't believe the other side can show any congressional, this reading that the last installment, such installment shall be before five years, it's kind of a stretch to say that. Well, what that really means is we're deferring payments only so much to present the, to protect the victim. I believe you would have to have some congressional intent to show a stretched meaning like that. Now, I know there's a lot of cases that say that. There's a Ninth Circuit case. It was in Bagot, was cited by the government, and the case was U.S. v. Remelow. And it says, quote, the Senate Judiciary Committee emphasized it was the intention of Congress, quote, that the offender's ability to pay be a factor in the restitution order. Further, quote from Remelow, in other words, the restitution order must be based on some evidence that appellants may be able to pay the amount fixed when required to do so. The possibility of an unforeseeable windfall is not enough. I don't, I think that wording doesn't mean, I don't think this statute means the court finds they're sort of indigent. They're either ordered to pay immediately when they have the ability, and there's no question that person can't get out of it by delaying. He's ordered to pay immediately. But there's a specific way to treat the person who's put on a payment plan. And that is he pays for five years, and then I believe the statute means he's off the hook. The two, the congressional intent doesn't talk about, there's nothing in there about defer and protect victims. It means it's talking about limiting to the defendant. One last comment. I know Mr. Whittlesey mentioned the Giannilli case, and perhaps that's just against my view, but it seems when you read it, it doesn't, all it says is something we don't disagree with, that a civil collection efforts in the State doesn't trump a Federal act. But we're saying they're constrained by a Federal act. Federal Code of Civil Procedure 69 says that if there is no statute, no Federal statute, State court procedure must be followed. So it's a Federal act that says State court procedure must be followed, and State court procedure does not allow you to do an execution, sale, or collect on a debt that's over 10 years old. And it's not the sovereign is being disregarded or the government supremacy. It's a Federal statute, 69. I'd like to reserve the last two minutes, 50 seconds. Thank you. Thank you. Mr. Whittlesey. Good afternoon, Your Honors. My name is Brent Whittlesey, and I'm here to represent the United States as well as the victims who are entitled to payment from Mr. Tocotin. Mr. Tocotin believes that because he hasn't paid in the last 13 years, he should never be required to pay. And we don't believe that that's the law. There are four principal arguments that Mr. Tocotin has raised. First of all, he says that when restitution is ordered as a condition of probation, the obligation to pay terminates at the expiration of probation. And that's certainly correct, but it has nothing to do with this case, because Mr. Tocotin was sentenced to a term of imprisonment of 27 months, not to probation. Let me ask you, when this came up in district court, was there an evidentiary hearing of any sort? No. Was it submitted solely on the stipulation? The stipulation and the argument of the parties at the hearing, yes, Your Honor. Is there any ñ the stipulation makes no reference to whether they're living together or whether community funds were paid or anything like that. Was there any evidence of that introduced at the district court? None at all, Your Honor. Okay. Yes. The second position that Mr. Tocotin advances is that when the district court orders a payment schedule for the defendant's payment of restitution, the obligation terminates at the end of the scheduled payments. This is incorrect. The restitution debt does not terminate at the end of supervised release. It terminates after a period of 20 years following the defendant's release from prison. And this Court has so held in United States v. Mays. Third, Tocotin argues that California statutes govern the period during which restitution is enforceable, and he says that it's the 10-year period under the California Code of Civil Procedure. This Court has rejected that argument directly in Ginelli, which was decided only a couple of weeks ago. Finally, he makes an ex post facto argument saying that you can't increase the period for the enforceability of the restitution debt to 20 years. We don't believe that there's any merit at all to the ex post facto position because the 20-year limitations period for the enforceability of criminal restitution debts was established in 1988, and the criminal conduct and the conviction and the sentence in this case all took place after 1988. Thank you very much. Thank you. Judge Nelson, do you have anything? No. Thank you. Mr. Smith? Thank you. I suppose I should like it when the opponent repeats all of my arguments, but I think the thing I said we should have looked at first, maybe we shouldn't look at first, the statute. And if you look at the commitment order, he was put on supervised release. There's a few things about the commitment order. One, it says if we were talking contract law, there'd be no question, you pay only as ordered by the probation officer. There's no probation officer. So what does he pay? But if we take the statute, he'll fall under the section five years after the date of sentencing. The statute said at the time, quote, the court may require that such defendant make restitution under this section within a specified period or in specified installments. The end of such period or the last such installment shall not be later than five years after sentencing or five years after imprisonment. So it does cover if there's no probation. So it does cover my client. If that was a contract, if you were told pay your last installment on a house note 360 months later, the last installment would be the last installment. If I replace the phrase such with the words it's referring to, I think it becomes clearer. The last ordered installment shall be not later than five years. The last specified installment shall be not later than five years. It sounds like that's the last installment. The idea that that really meant we're just deferring things is wrong because, well, I'm not saying it's absolutely wrong. This Court should think it's right and this Court should think it's wrong. And I think I don't – I was surprised the counsel mentioned the May case. It doesn't deal with this periodic payment. The Soderling case does, and I did feel it was a problem. However, it was dicta in that the Soderling case, there was no argument about this statute or there was no periodic payments. We don't even know if five years passed. That was simply could the government and the defendant agree to pay for noncharged crimes. And in a footnote, it seemed to say something opposite of my position. However, the government doesn't seem to sort of contest that if there's periodic payments at the end of five years because in his brief he mentioned House. And House said if there are no periodic payments, they don't cease at the end of five years. The upshot being, the converse being, well, if there are, they do. It makes sense with other federal statutes such as – I know it's not bankruptcy court where you can't agree to pay over five years. In Chapter 13, the congressional intent shows it's to keep someone, I would think, from selling themselves into servitude or peonage when they are found that they can't pay at the initial time. Thank you, Your Honor. Thank you very much. When will Sessom have a brief injury file? Your brief is due when? Is it the 22nd? The 22nd. Should we defer until April 1st? I may, Your Honor, ask to augment the record. I don't – I'm not asking the Court to rule if I can or not, but I'll file something by the 22nd. Judge Beezer's point was we're going to defer submission until the 22nd to wait for your submission. Thank you very much. Mr. Whittlesey, thank you as well. The case just argued as submitted. It will be submitted. Okay. Business Office v. Rapid Payroll, 055-452 is submitted on the brief. So the next case to be argued is 065-6339, and the companion case is Watec, America v. Burger Con. Each side will have 20 minutes.
judges: Beezer, Nelson, Silverman